T.C. Memo. 1996-1


UNITED STATES TAX COURT



WALTON A. SUTHERLAND, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket Nos. 5780-92, 21777-93,     Filed January 2, 1996.
          592-94.



     R determined deficiencies based on, among other
theories, P's failure to report as income legal fees
that P, an attorney, earned in 1987.
     1.  <u>Held</u>, P's oral motion to shift the burden of
proof is denied.
     2.  <u>Held</u>, <u>further</u>, P's oral motion to dismiss in
petitioner's favor the 1987 year because the 3-year
period of limitations on assessment and collection for
that year has expired is denied.
     3.  <u>Held</u>, <u>further</u>, P earned the fee in question in
1987.
     4.  <u>Held</u>, <u>further</u>, R's determinations of additions
to tax under sec. 6653(a)(1)(A) and (B), I.R.C., for
1987 are sustained.
     5.  <u>Held</u>, <u>further</u>, R's determination of an
addition to tax under sec. 6661, I.R.C., for 1987 is
sustained.

Kenneth S. Sussmane, for petitioner.

Albert G. Kobylarz and Guy G. LaVignera, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge:  These three cases have been consolidated for trial, briefing and opinion.  Respondent, by three notices of deficiency, determined deficiencies in, and additions to, petitioner's Federal income tax, as well as a penalty, as follows:

| Docket No. | Year | Deficiency | Additions to Tax and Penalties | | | | |
| | | | Sec. 6653(a) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6661 | Sec. 6662(a) |
| 5780-92 | 1988 | $168,900 | $8,445 | --- | --- | $42,225 | --- |
| 21777-93 | 1987 | 157,105 | --- | $7,855 | * | 39,276 | --- |
| 592-94 | 1989 | 44,728 | --- | --- | --- | --- | $8,946 |

* 50 percent of the interest due on $157,105.


Respondent first issued a notice of deficiency for 1988.  In that notice of deficiency, respondent explained that the basis for the adjustment giving rise to substantially all of the deficiency in tax was that petitioner had failed to establish a nontaxable source for funds used in his "casino activities".  Subsequently, respondent issued notices of deficiency for 1987 and 1989.  The basis for the adjustments made in those notices of deficiency is that petitioner, an attorney, failed to report as income a certain fee earned by him.  On brief, respondent concedes that the three notices of deficiency are to be

considered in the alternative, and that she relies primarily on our finding that petitioner failed to report fee income of $408,318 in 1987. Indeed, respondent opens her brief with the following statement: "If respondent prevails with respect to the 1987 year, and the legal fee is included therein, there would be no deficiency for either 1988 nor 1989 as the notices of deficiency for these years represent alternative theories of inclusion of the legal fee."[1]

In addition to the issue of unreported income, we must decide: (1) Whether the statute of limitations bars assessment of a deficiency for 1987, (2) whether petitioner has been relieved in part of his burden of proof, and (3) whether petitioner is liable for certain additions to tax and a penalty.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Introduction

Some of the facts have been stipulated and are so found. The stipulation of facts filed by the parties and accompanying

---

[1] Respondent's notice of deficiency for 1988 contains an adjustment increasing income in the amount of $27,258, which is labeled "Interest Income". The parties have not dealt with that item on brief. Since respondent has prevailed with respect to 1987, we assume that respondent has conceded that adjustment.

exhibits are incorporated herein by this reference. Some of respondent's proposed findings of fact have been conceded by petitioner and, accordingly, are so found.[2]

At the time of trial, petitioner was an attorney admitted to practice law in the State of New York. From 1974 through the time of trial, petitioner was employed by the New York State Department of Law. In 1980 petitioner resided in New York City with his sister, Hester Sutherland, and Hester's minor daughter, Maude. Sometime in the early 1980's, petitioner moved to 142 Romaine Avenue, Jersey City, New Jersey. Hester and Maude moved

---

[2]    In part, Rule 151 provides as follows:

RULE 151. BRIEFS

\*       \*       \*       \*       \*       \*       \*

(e) Form and Content:  \* \* \*

\*       \*       \*       \*       \*       \*       \*

(3) \* \* \* In an answering or reply brief, the party
shall set forth any objections, together with the
reasons therefor, to any proposed findings of any other
party, showing the numbers of the statements to which
the objections are directed; in addition, the party may
set forth alternative proposed findings of fact.

In the instant case, respondent filed an opening brief,
petitioner filed an answering brief, and respondent filed a reply
brief. The answering brief fails to set forth objections to the
proposed findings of fact set forth in the opening brief.
Accordingly, we must conclude that petitioner has conceded
respondent's proposed findings of fact as correct except to the
extent that petitioner's proposed findings are clearly
inconsistent therewith. See Fein v. Commissioner, T.C. Memo.
1994-370 n.1; Estate of Stimson v. Commissioner, T.C. Memo. 1992-
242; Cunningham v. Commissioner, T.C. Memo. 1989-260 n.6.

in with petitioner.  Sometime in 1988, Hester purchased, and moved with Maude into, an apartment in New Jersey.  Petitioner continued to reside at the Jersey City address during the years in issue and at the times the petitions herein were filed.

Maude suffered from sickle cell disease.  On or about February 27, 1980, Maude became ill.  Hester, accompanied by petitioner, took Maude to Harlem Hospital in New York City for treatment.  Subsequently, Maude's condition worsened, and she suffered permanent injuries.

The remaining findings of fact relate to the settlement of a lawsuit claiming medical malpractice (the malpractice action) brought by Hester in connection with Maude's injuries.

Hester Retains Petitioner

On or about April 4, 1980, Hester retained petitioner to prosecute the malpractice action.  Hester agreed that, in consideration thereof, petitioner was to receive a fee of 33-1/3 percent of the sum recovered (the 33-1/3-percent fee). The terms of petitioner's engagement are set forth in a document dated April 4, 1980, headed "Retainer", signed by Hester, and witnessed by petitioner (the retainer).  At about the same time, petitioner completed, signed, and filed a retainer statement (petitioner's retainer statement) with the Judicial Conference of the State of New York (the Judicial Conference).  Petitioner's retainer statement reflects the terms of the retainer.

Petitioner Engages Lipsig, Sullivan, Mollen, and Liapakis

Sometime in April 1980, petitioner engaged the law firm of Lipsig, Sullivan, Mollen, and Liapakis (the Lipsig firm) to represent Hester and Maude in the malpractice action. The Lipsig firm was to share in the 33-1/3-percent fee. Initially, the Lipsig firm was to receive two-thirds of that fee, and petitioner was to retain one-third. Later the proportions were changed to one-half and one-half.

Prosecution of the Malpractice Action

In October 1980, the Lipsig firm commenced the malpractice action in the Supreme Court of the State of New York, County of New York (the New York court). The Lipsig firm filed a complaint alleging that the defendants' medical services caused severe, serious, and permanently disabling injuries to Maude, and caused the loss to Hester of Maude's services. Petitioner did not appear as attorney of record in any of the proceedings relating to the malpractice action. Nevertheless, petitioner assisted and was a tremendous help to the Lipsig firm in the prosecution of the malpractice action. For example, he reviewed pleadings, he assisted in trial preparation, he made specific suggestions on matters such as reinstating a specific paragraph to the complaint, he did legal research, e.g., as to the minimum standards for hospital care in New York, he obtained experts, he assisted in an interlocutory appeal, and he contributed meaningfully to settlement of the action.

Settlement of the Malpractice Action

The malpractice action was settled with an entry by the New York court of an order, the Infants Compromise Order (the order), on June 2, 1987. The order is based, in part, on (1) a petition, the Infant's Compromise Petition (the compromise petition), made by Hester, (2) an affirmation made by a member of the Lipsig firm (the Lipsig firm affirmation), and (3) an affirmation made by petitioner (petitioner's affirmation). Among other things, the order authorizes Hester to settle the malpractice action for the sum of $2,750,000. From that sum, the order requires that the Lipsig firm be reimbursed certain disbursements and be paid $408,318, "as and for their attorneys [sic] fees". From the $2,750,000, the order further requires that Hester be paid on her cause of action for loss of services (1) $250,000 and (2) $408,318, "one-half of the attorneys [sic] fees in this action". The remainder of the sum is ordered to be paid to Hester on behalf of Maude. Hester and the Lipsig firm had previously agreed that the 33-1/3-percent fee would be reduced to 30 percent.

The sum of $408,318, "one-half of the attorneys [sic] fees in this action", was ordered paid to Hester because petitioner had waived his right to that sum. In the compromise petition, Hester explains petitioner's waiver as follows:

> My brother, WALTON SUTHERLAND, Esq., who has rendered
> invaluable assistance to me in caring for MAUDE, by
> agreement with * * * [the Lipsig firm] was to receive

fifty (50%) percent of the legal fee.  It has been agreed by the attorneys for the plaintiffs that fifty percent of * * * the legal fee in the amount of $408,318.10 be waived to me towards my cause of action for loss of services in lieu of [petitioner's] receiving his fee.

In the Lipsig firm affirmation, the waiver is explained as follows:  "Walton Sutherland, Esq., the forwarding attorney in this matter, has agreed to waive his share of the legal fees in this case in Hester's behalf so that she may continue to have the wherewithal to care for her daughter, MAUDE."  Petitioner's affirmation contains the following explanation:  "Your affirmant agrees to waive the legal fee in this matter to HESTER SUTHERLAND, herein, towards her claim for loss of services." Petitioner's affirmation is dated May 12, 1987.

Deposit of Proceeds Paid to Hester

Hester received two checks totaling $658,318 in discharge of the provisions of the order to pay her $250,000 and $408,318 in settlement of her cause of action for loss of services.  Those two checks were deposited into account number 08-057596-2 at the East River Savings Bank, in New York City (the first account). The first account was titled "WALTON SUTHERLAND JR OR HESTER SUTHERLAND".  It carried petitioner's Social Security number. Between August 28, 1987, and February 2, 1988, petitioner withdrew in excess of $150,000 from the first account.  On February 3, 1988, the first account was closed and the balance was transferred to East River Savings Bank account number

08-058077-2 (the second account).  The second account was titled similarly to the first account, but carried Hester's Social Security number.  Petitioner was authorized to make withdrawals from the second account.  Between February 4, 1988, and November 28, 1990, petitioner withdrew at least $518,000 from the second account.

Gambling in Atlantic City

During 1987, 1988, and 1989, petitioner traveled to Atlantic City, New Jersey, to gamble at at least four casinos:  Caesars Atlantic City, Tropworld, Ballys Park Place Casino, and Trump Casino Hotel.  Hester, at times, accompanied petitioner to Atlantic City.  At each casino, petitioner bought chips, with which to make bets (known as "buying in").  Additionally, at one casino, Tropworld, petitioner maintained a front money account from January 1988 through at least July 1990.  A front money account allows a patron to put money on deposit with the casino and draw on the deposit at the gaming tables so the patron does not have to carry around cash.  The following represents petitioner's gambling history at the casinos during 1987, 1988, and 1989:

| 1987 | Caesars | Tropworld | Trump | Ballys |
|------|---------|-----------|-------|--------|
| Buying in | $0 | $22,000 | $0 | $0 |
| Front money deposit | 0 | 0 | 0 | 0 |
| Total | $0 | $22,000 | $0 | $0 |

| 1988 | Caesars | Tropworld | Trump | Ballys |
|------|---------|-----------|-------|--------|

| Buying in | $0 | $73,700 | $40,300 | $56,250 |
|---|---|---|---|---|
| Front money deposit | 0 | 111,200 | 0 | 0 |
| Total | $0 | $184,900 | $40,300 | $56,250 |

| 1989 | Caesars | Tropworld | Trump | Ballys |
|---|---|---|---|---|
| Buying in | $59,900 | $48,150 | $14,400 | $0 |
| Front money deposit | 0 | 0 | 0 | 0 |
| Total | $59,900 | $48,150 | $14,400 | $0 |

Petitioner's Tax Returns

Petitioner reported the following items of gross income on his Federal income tax returns for the years in issue:

| | 1987 | 1988 | 1989 |
|---|---|---|---|
| Wages | $65,917 | $45,379 | $48,922 |
| Taxable interest income | 105 | 147 | 238 |
| State tax refund | 0 | 16 | 221 |
| Dividend income | 0 | 0 | 33 |
| Total | $66,022 | $45,542 | $49,414 |

Petitioner made no disclosures in his 1987 Federal income tax return or in a statement attached to that return of any amounts omitted from that return.

Unreported Income

Petitioner failed to report an item of gross income in the amount of $408,318 received in 1987.

Negligence

Petitioner and Hester acted together to structure receipt of the $408,318 so that petitioner could retain control of it but claim that he had not received it for tax purposes.

OPINION

I. Introduction

   A. Questions for Decision

The principal question we have been asked to decide is whether petitioner underreported his income for 1987, 1988, or 1989.  We have found that petitioner failed to report an item of gross income in the amount of $408,318 received in 1987.  Based on respondent's concession that the notices of deficiency for 1987, 1988, and 1989 are to be considered in the alternative, and given that we will sustain respondent's determination of a deficiency for 1987 in full, we determine that there are no deficiencies in tax, additions to tax, or penalties for 1988 or 1989.  We shall enter decisions accordingly.  We must still address two motions made by petitioner and determine whether petitioner is liable for respondent's addition to tax for 1987.

II. Motions

   A. Motion To Dismiss Based on Period of Limitations

At trial, petitioner orally moved to dismiss in petitioner's favor with respect to 1987.  We did not then rule on petitioner's motion.  Petitioner claims that the 3-year period of limitations on assessment and collection with respect to that year had expired.  We note that the statute of limitations is an affirmative defense and does not affect the jurisdiction of this Court.  Rule 39; Badger Materials, Inc. v. Commissioner, 40 T.C. 1061, 1063 (1963).  Were we to agree with petitioner's argument,

we would recharacterize the motion as one for summary judgment and enter a decision of no deficiency as to petitioner's 1987 year. Sec. 7459(e).

In general, the assessment of a deficiency in tax must be made within 3 years of the taxpayer's filing of his return. Sec. 6501(a). However, the limitations period is extended to 6 years if the taxpayer omits from gross income an amount properly includable therein that is in excess of 25 percent of the amount of gross income stated in the return. Sec. 6501(e)(1)(A). In determining the amount omitted there shall not be taken into account any amount omitted from gross income if such amount is disclosed in the return or in a statement attached to the return. Sec. 6501(e)(1)(A)(ii).

Petitioner filed his 1987 Federal income tax return on or about April 15, 1988, reporting gross income in the amount of $66,022.57. On July 12, 1993, respondent issued a notice of deficiency to petitioner for 1987. Respondent concedes that assessment of a deficiency in tax for 1987 cannot be made within the 3-year period provided for in section 6501(a). Respondent asserts, however, that the 6-year period of limitations provided for in section 6501(e)(1)(A) applies. Respondent must prove that the requirements of section 6501(e)(1)(A) are satisfied. See Bardwell v. Commissioner, 38 T.C. 84, 92 (1962), affd. 318 F.2d 786 (10th Cir. 1963); Seltzer v. Commissioner, 21 T.C. 398, 401-402 (1953).

In his 1987 Federal income tax return, petitioner reported gross income of $66,022. For 1987, petitioner failed to report an item of gross income in the amount of $408,318. Petitioner testified that the copy of his 1987 return in evidence was complete. We have examined that copy and find no disclosure of the omitted item of gross income. There are no statements disclosing the omitted item attached to the return. Petitioner has omitted from his 1987 Federal income tax return an amount in excess of 25 percent of the amount of gross income stated in the return. He has not disclosed the omitted amount in the return or in a statement attached to the return. The copy of petitioner's 1987 return in evidence was received by respondent pursuant to a subpoena to petitioner requiring him to produce that return. Petitioner moved for us to quash that subpoena, and we denied that motion. On brief, petitioner asks us to reconsider that denial. We have done so and again find no grounds for quashing the subpoena. The copy of the return in question had been provided to petitioner by respondent, and the request to provide it to respondent at trial was not burdensome.

On the premises stated, petitioner's motion to dismiss will be denied.

B. Motion To Shift Burden of Proof

At trial, petitioner orally moved to shift the burden of proof. We did not then rule on petitioner's motion. On brief,

petitioner concedes that the burden of proof normally rests with the taxpayer. See Rule 142(a). Petitioner argues, however:

> This presumption of correctness does not apply and the burden of proof shifts to respondent where there is a showing by a petitioner that the determination of the deficiency set forth in the notice of deficiency was arbitrarily made.

With respect to respondent's notice of deficiency for 1987, petitioner claims: "Respondent lost petitioner's 1987 tax return and calculated the 1987 notice of deficiency arbitrarily without knowledge of the actual income reported or taxes paid by petitioner in 1987."

Petitioner claims that respondent's notice of deficiency is arbitrary and therefore should not be afforded the usual presumption of correctness. In addressing that contention, we note that the courts generally will not look behind the Commissioner's determination, even if it is based on hearsay or other evidence inadmissible at trial. Anastasato v. Commissioner, 794 F.2d 884, 886-887 (3d Cir. 1986), vacating T.C. Memo. 1985-101; Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984); Suarez v. Commissioner, 58 T.C. 792, 813 (1972). However, where the notice of deficiency is shown to be arbitrary, that is sufficient to find for the taxpayer unless respondent adequately cures such arbitrariness. Helvering v. Taylor, 293 U.S. 507 (1935). Consequently, under the Rule in Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), in cases appealable to the Court of Appeals for the Third

Circuit, the presumption of correctness will not be given effect unless the Commissioner produces "evidence linking the taxpayer to the tax-generating activity in cases involving unreported income, whether legal or illegal." Anastasato, supra at 887. In these cases, respondent's notice of deficiency for 1987 is based on petitioner's failure to report an attorney's fee (or attorney's referral fee) of $408,318. We conclude there is sufficient evidence that petitioner was entitled to an attorney's fee (e.g., the retainer agreement).

Petitioner claims that respondent lost petitioner's 1987 return. Petitioner, however, has failed to propose any findings of fact in support of that claim, and we have made no such finding. Petitioner has failed to carry his burden of proof on that point. Moreover, even if facts did support that claim, petitioner has failed to show that respondent's determination was arbitrary. Perhaps respondent had abstracted data from petitioner's return and no longer needed it. Indeed, it is difficult to understand just what petitioner's complaint is. Petitioner is not claiming that he did report the attorney's fee on his return and that respondent is double charging him. Whether respondent had petitioner's return or not, respondent charged petitioner with income respondent had reason to believe petitioner did not report. There is nothing arbitrary about that.

Finally, petitioner argues that respondent raised a new matter for 1988 (presumably the attorney's fee theory), and ought to bear the burden of proof on that matter. See Rule 142(a). The long and the short of it is that we have sustained respondent's determination of a deficiency for 1987, not 1988, and for that year respondent raised no new issue. Petitioner has not brought to our attention any authority to the contrary.

Petitioner's motion to shift the burden of proof will be denied. Indeed, even were we to shift the burden of proof to respondent, that would not help petitioner. On no issue for which petitioner bears the burden of proof do we have a situation in which we must look to who bears the burden of proof to resolve a balance in the evidence. In this case, considering the evidence before us, it is of no consequence who bears the burden of proof.

III. Deficiency

We have found that petitioner failed to report an item of gross income in the amount of $408,318 received in 1987. We base that finding on our conclusion that, at the time the New York court entered the Infants Compromise Order (the order), on June 2, 1987, petitioner had the right to a one-half share of the attorney's fees awarded by the court, which right petitioner waived in favor of Hester, his sister. A taxpayer may not avoid tax by an anticipatory arrangement that assigns income earned by the taxpayer to another. Lucas v. Earl, 281 U.S. 111, 112

(1930); see <u>United States v. Allen</u>, 551 F.2d 208 (8th Cir. 1977) (taxpayer, a real estate broker, was taxed on commission earned on sale of house to his parents; commission turned over to his parents; taxpayer argued that he had agreed to sell the house to his parents free of a commission and, therefore, had waived the commission); <u>Daugherty v. Commissioner</u>, 63 F.2d 77 (9th Cir. 1933), affg. 24 B.T.A. 531 (1931) (attorney who assigned to his wife one-half of his share of a contingency fee is taxable on the full share); <u>Kochansky v. Commissioner</u>, T.C. Memo. 1994-160 (attorney who represented client in malpractice suit taxable on contingent fee assigned to former wife in property settlement agreement).  When income is assigned to another:  "The choice of the proper taxpayer revolves around the question of which person * * * in fact controls the earning of the income rather than the question of who ultimately receives the income."  <u>Vercio v. Commissioner</u>, 73 T.C. 1246, 1253 (1980); <u>Vnuk v. Commissioner</u>, 621 F.2d 1318, 1320 (8th Cir. 1980), affg. T.C. Memo. 1979-164; <u>Kochansky v. Commissioner</u>, <u>supra</u>.

Neither party here argues that the $408,318 item here in question is taxable to the Lipsig firm.  The choice is between petitioner, for whom, if the item is his, it is a fee includable in gross income pursuant to section 61(a)(1), and Hester, for whom, if it is hers, it is an amount excludable from gross income pursuant to section 104(a)(2) as an amount received on account of personal injury.  The evidence here strongly supports the

conclusion that petitioner controlled the earning of the item in question, notwithstanding that the New York court ordered that it be paid to Hester. In its order (the order), the New York court called the item an attorney's fee and stated that petitioner had waived his right to the fee. If the item were not an attorney's fee, why would the New York court describe it as such and speak of a waiver? Petitioner was not a party to the malpractice action. The only possible claim he had to any proceeds was for services rendered as an attorney. If he had not rendered those services, and was not entitled to a fee, then any discussion of a waiver makes no sense. Yes, it is possible that petitioner (or Hester) had negotiated a reduced, one-half, fee arrangement with the Lipsig firm, and the waiver was simply the way that arrangement was carried out. We do not, however, believe that. Under New York law, attorney's fees in an action involving an infant are fixed not by the attorney's contract or retainer agreement but by the court, and any agreement of the guardian is advisory only. N.Y. Jud. sec. 474 (McKinney 1983); Werner v. Levine, 276 N.Y.S.2d 269, 271 (Sup. Ct. 1967). Under New York law, in a action involving a minor, a settlement is ineffective without a court order. N.Y. Civ. Prac. L. & R. sec. 1207 (McKinney 1976 & Supp. 1995); Valdimer v. Mount Vernon Hebrew Camps, Inc., 210 N.Y.S.2d 520 (1961). Affidavits of the infant's representative and attorney, if any, must accompany the papers supporting the motion or petition for an order. N.Y. Civ. Prac.

L. & R. sec. 1208 (McKinney 1976 & Supp. 1995).  The order and the supporting papers we have described--the compromise petition, the Lipsig firm affirmation, and petitioner's affirmation--all are consistent in treating petitioner as entitled to a fee, which he waived.  Both the compromise petition and the Lipsig firm affirmation describe a contingent fee arrangement of 33-1/3 percent (later reduced to 30 percent).  If the arrangement were otherwise, i.e., if, from the beginning, petitioner had been entitled to no portion of that fee and the Lipsig firm was to get less than 33-1/3 percent (later, 30 percent), then the compromise petition and the Lipsig firm affirmation were misleading, if not fraudulent.  We do not believe that to be the case.  Petitioner assisted and was a tremendous help to the Lipsig firm in the prosecution of the malpractice action.  The retainer, petitioner's retainer statement, and his arrangement with the Lipsig firm all are consistent with the conclusion that petitioner earned and was entitled to a fee.  The only evidence to the contrary is the testimony of petitioner and Hester.  Petitioner's testimony was not straightforward; we found him evasive in many of his answers.  We accord his testimony little weight.  Hester's testimony agreed with that of her brother.  Because of the close family relationship, and because she exposed herself to no adverse income tax consequence, we also accord her testimony little weight.

Finally, petitioner claims that he cannot be taxed on the item in question because he did not actually receive it, and it would have been illegal for him to have received it. See Commissioner v. First Sec. Bank of Utah, N.A., 405 U.S. 394 (1972). Petitioner argues that he was prohibited from receiving the item under (1) New York law and (2) an order issued by his employer, the New York Attorney General, prohibiting Department of Law employees from engaging in private practice. We do not agree that the New York law or Attorney General rule cited by petitioner would make it illegal for petitioner to receive the fee that he waived to Hester. New York Code of Professional Responsibility, rule 2-107(A), which covers legal fee splitting, does not invalidate petitioner's fee-sharing agreements with the Lipsig firm because (1) we assume Hester consented to the agreements, as evidenced by the statements made in her affidavit supporting the petition for a compromise order, and (2) petitioner contributed to the legal work in an amount sufficient to satisfy rule 2-107(A). See Benjamin v. Koeppel, 626 N.Y.S.2d 982, 985-986 (1995) (referring attorney contributed to the legal work by merely interviewing the client, evaluating the case, discussing the case with the representing firm, and attending one meeting between client and firm). N.Y. Jud. sec. 474 does not prohibit petitioner from collecting fees; rather it prescribes the procedural method for obtaining fees, which petitioner failed to follow as he had assigned his portion of the fee. Finally,

petitioner has not convinced us that his employment restriction, while prohibiting him from private practice, makes it illegal for him to collect the fees received from such practice. Accordingly, we find that petitioner's ability to receive the fee was not impeded by law or employment restriction. The New York court was apprised of petitioner's agreement with the Lipsig firm. We believe that, by ordering that petitioner's waiver be given effect so that half the attorney's fees be paid to Hester, the New York court recognized petitioner's right to receive the fee and, consequently, petitioner's ability to control the fee's disposition. Accordingly, $408,318 is taxable to petitioner in 1987.

## IV. Additions to Tax

### A. Negligence

We have determined an underpayment in tax for 1987. Section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the entire underpayment if any portion of such underpayment is due to negligence. Section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment due to negligence. "Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985)(quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th

Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)). Petitioner bears the burden of proof. Rule 142(a).

In the petition, petitioner assigns error to respondent's determination of an addition to tax for negligence on the ground that there is no deficiency. Petitioner avers no other facts in support of his assignment of error. On brief, petitioner argues that petitioner reported the transaction consistently with the actual receipt of the item and that respondent's assignment of income theory is not contained in the Code or regulations, but is a "limited doctrine" contained in case law. Petitioner argues that petitioner cannot be expected to have intentionally disregarded that doctrine. Moreover, petitioner argues that respondent has introduced absolutely no evidence that petitioner engaged in any scheme to avoid taxes. We disagree. The $408,318 was deposited into a joint account belonging to Hester and petitioner. Petitioner withdrew substantial sums from that account and gambled with them in Atlantic City. Such use of the $408,318 is inconsistent with the statement in the Lipsig firm affirmation, no doubt based on statements by petitioner or Hester, that petitioner "has agreed to waive his share of the legal fees in this case in Hester's behalf so that she may continue to have the wherewithal to care for her daughter MAUDE." We believe that petitioner and Hester acted together to structure receipt of the $408,318 so that petitioner could retain control of it but claim that he had not received it for income tax

purposes, and we so find. We believe that petitioner was negligent in not reporting the $408,318 on his 1987 return, and we so find. We sustain respondent's additions to tax under section 6653(a)(1)(A) and (B) in their entirety.

B. **Substantial Understatement of Income Tax Liability**

For returns due before January 1, 1990, section 6661 provides for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement. An understatement is "substantial" when the understatement for the taxable year exceeds the greater of (1) 10 percent of the tax required to be shown or (2) $5,000. The understatement is reduced to the extent that the taxpayer has (1) adequately disclosed his or her position, or (2) has substantial authority for the tax treatment of an item. Sec. 6661; sec. 1.6661-6(a), Income Tax Regs. Petitioner bears the burden of proving that he is not subject to the addition to tax determined by respondent. Rule 142(a).

Petitioner's understatement for the taxable year exceeded 10 percent of the tax required to be shown. It is therefore substantial under section 6661. Petitioner argues, however, that there was substantial authority for his treatment of the item. Specifically, petitioner argues that he "reported the transaction consistently with an award from the New York court and consistently with the treatment of such item by the Lipsig Firm." Section 1.6661-3(b)(2), Income Tax Regs., lists the types of

authority that will be considered in determining whether substantial authority exists. The authority upon which petitioner relies, i.e., the court award and the Lipsig firm's treatment, are not among those that will be considered. Furthermore, there is no evidence that petitioner made any disclosure of the item on his 1987 tax return. Petitioner has thus failed to prove that he is not subject to the section 6661 addition to tax. Accordingly, we sustain respondent's section 6661 addition to tax.

<u>An order denying petitioner's oral motion to shift the burden of proof will be issued</u>.

<u>An order denying petitioner's oral motion to dismiss for lack of jurisdiction will be issued, and decision will be entered for respondent in docket No. 21777-93</u>.

<u>Decisions will be entered for petitioner in docket Nos. 5780-92 and 592-94</u>.