T.C. Memo. 1997-237


UNITED STATES TAX COURT


DATHA D. BURKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MARTIN M. BURKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 14139-89, 15957-92.     Filed May 22, 1997.


<u>Mark G. Ayesh</u>, for petitioners.

<u>Michael L. Boman</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  These cases are before the Court, consolidated for trial, briefing, and opinion.  See Rule 141.  Datha D. Burke petitioned the Court to redetermine respondent's determination of deficiencies in her 1979 through 1982 Federal income taxes.

Respondent reflected this determination in a notice of deficiency issued to Mrs. Burke on March 23, 1989.  Martin M. Burke petitioned the Court to redetermine respondent's determination of deficiencies in his 1979 through 1982 Federal income taxes. Respondent reflected this determination in a notice of deficiency issued to Mr. Burke on January 12, 1988.

Respondent determined the following deficiencies and additions thereto:

Datha D. Burke:  Docket No. 14139-89

|  |  | Additions to Tax | | | |
| Year | Deficiency | Sec. 6653(a) | Sec. 6653(a)(1) | Sec. 6659 | Sec. 6661 |
| 1979 | $65,086 | $3,254 | --- | --- | --- |
| 1980 | 151,493 | 7,575 | --- | --- | --- |
| 1981 | 69,030 | --- | $3,452 | --- | --- |
| 1982 | 483,767 | --- | 24,188 | $61,950 | $69,317 |

Martin M. Burke:  Docket No. 15957-92

|  |  | Additions to Tax | | | |
| Year | Deficiency | Sec. 6653(a) | Sec. 6653(a)(1) | Sec. 6659 | Sec. 6661 |
| 1979 | $68,798 | $3,440 | --- | --- | --- |
| 1980 | 161,063 | 8,053 | --- | --- | --- |
| 1981 | 88,298 | --- | $4,415 | --- | --- |
| 1982 | 422,140 | --- | 21,107 | $111,688 | $12,462 |

Respondent also determined that petitioners were liable for additions to their 1981 and 1982 taxes under section 6653(a)(2), and that their 1982 income tax liability was subject to an increased rate of interest under section 6621(c).

The petitions are silent on the appropriateness of the additions to tax and increased rate of interest determined by

respondent. Petitioners' counsel also did not identify these items as issues in either his opening or closing argument at trial. Nor does petitioners' post-trial brief address these items. We consider petitioners to have conceded these items. See Rule 34(b)(4); Ducommun v. Commissioner, 732 F.2d 752, 753-754 (10th Cir. 1983); Frederick v. Commissioner, 101 T.C. 35, 36 n.4 (1993); Jarvis v. Commissioner, 78 T.C. 646, 658 n.19 (1982); see also Merlino v. Commissioner, T.C. Memo. 1993-10 200.

Following this and other concessions, we are left to decide the following issues for 1982:

1. Whether petitioners received a $413,000 dividend on the cancellation of debt owed by Mr. Burke to Burke Energy Corp. (BEC), petitioners' wholly owned corporation. We hold they did.

2. Whether petitioners underreported by $331,593 their taxable capital gain on the sale of certain property. We hold they did.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar. Although respondent determined separate tax liabilities for petitioners for each of the subject years, we refer to their 1982 liabilities as a joint liability because they filed a joint 1982 Federal income tax return.

## FINDINGS OF FACT[1]

Some of the facts have been stipulated and are so found. The stipulated facts and exhibits submitted therewith are incorporated herein by this reference. Petitioners are husband and wife, and they resided in Hutchinson, Kansas, when they petitioned the Court. They filed a 1982 Form 1040, U.S. Individual Income Tax Return, using the filing status of "Married filing joint return". They each owned 50 percent of BEC's stock during the relevant years. BEC was the parent company of a consolidated group of corporations engaged in the business of wholesaling and retailing natural gas liquids.

Mr. Burke owed BEC approximately $853,000 in 1982, and petitioners devised a plan to reduce this debt. Under the plan, Mrs. Burke would transfer her interest in two parcels of property to Mr. Burke in exchange for his interest in certain stock, and Mr. Burke would transfer the property to BEC in reduction of the debt. The parcels were located in Hutchinson, Kansas, one at A & Walnut (Walnut property) and the other at 707 North Main

---

[1] After the Court filed the parties' opening briefs, petitioners notified the Court that they did not intend to file the second brief. We assume that petitioners do not object to respondent's proposed findings of fact, except to the extent that petitioners' proposed findings of fact are clearly inconsistent therewith, in which case we have resolved the inconsistencies based on our understanding of the record as a whole. See Estate of Jung v. Commissioner, 101 T.C. 412, 413 n.2 (1993); see also Estate of Freemen v. Commissioner, T.C. Memo. 1996-372; Sutherland v. Commissioner, T.C. Memo. 1996-1; Houser v. Commissioner, T.C. Memo. 1995-330.

(North Main property).  The stock consisted of Mr. Burke's holdings in Maize State Bank (Maize Bank) and University State Bank of Wichita (University Bank).  (We refer collectively to the stock of Maize Bank and the stock of University Bank as the Bank Stock.)  Mr. Burke had financed the purchase of some of the Bank Stock through BEC.

On June 20, 1982, petitioners executed two contracts to exchange the property for the Bank Stock.  One contract provided that Mrs. Burke sold the North Main property to Mr. Burke for $250,000, consisting of 29,341 shares of Maize Bank and his assumption of a $5,294 debt owed by her.  The second contract provided that Mrs. Burke sold the Walnut property to Mr. Burke for $675,000, consisting of 20,000 shares of Maize Bank, 23,500 shares of University Bank, and his assumption of a $150,638 debt owed by her.  Mrs. Burke deeded the properties to Mr. Burke on June 25, 1982, and Mr. Burke assumed the liabilities set forth in the contracts.  Mr. Burke never transferred the Bank Stock to Mrs. Burke.

On June 25, 1982, Mrs. Burke's basis in the North Main property was $8,850, and the property was worth $250,000. Mrs. Burke's basis in the Walnut property was $72,426, and the property was worth $262,000.[2]  Mr. Burke's basis in his Maize

_____

[2] The parties dispute the admissibility of Exhibit 5, an appraisal report proffered by petitioners to establish the fair market value of the Walnut property.  We hold that the exhibit is
(continued...)

Bank stock was $5.92 per share, and each share was worth $8.34.
Each share of Mr. Burke's University Bank stock was worth $1.89.

On June 29, 1982, Mr. Burke and BEC executed two contracts
under which Mr. Burke transferred the properties to BEC in
exchange for its assumption of the liabilities which he assumed
from Mrs. Burke and its cancellation of debt owed by him.  One
contract provided that Mr. Burke sold the North Main property to
BEC for $250,000, consisting of BEC's assumption of the $5,294
debt and its cancellation of his $244,706 debt.  The second
contract provided that Mr. Burke sold the Walnut property to BEC
for $675,000, consisting of its assumption of the $150,638 debt
and its cancellation of his $524,362 debt.  One day later,
Mr. Burke deeded the properties to BEC, and BEC assumed $155,932
of debt and canceled Mr. Burke's debt of approximately $853,000
(instead of the total canceled debt of $769,068 shown in the
contracts).  Following the transaction, BEC claimed a $925,000
basis in the properties and apportioned this basis as follows:

| Asset | Acquisition Cost |
|---|---|
| Land: | |
|   Walnut property | $231,250 |
| | |
| Buildings: | |
|   Walnut property | 507,180 |
|   North Main property | 186,570 |

On Schedule D (Capital Gains and Losses) of their 1982
Form 1040, petitioners reported that, on June 30, 1982, they had

---

2(...continued)
inadmissible and do not rely on it.

sold real estate acquired on January 1, 1982, and realized a $16,690 gain on the sale. They reported that their selling price was $853,086 and that their basis was $836,396.

Respondent determined that the North Main property was worth $250,000 when BEC canceled Mr. Burke's debt, the Walnut property was worth $262,000 at that time, and BEC paid petitioners $925,000 for the properties. Respondent determined that the effect of petitioners' transfer of the properties to BEC was that petitioners received a $413,000 dividend from BEC, and realized a capital gain of $430,724. Respondent determined that $189,574 of the capital gain was attributable to the Walnut property and $241,150 to the North Main property. Applying the long-term capital gains deduction under section 1202 to part of the $430,724 capital gain, respondent calculated petitioners' taxable gain at $348,283, rather than the $16,690 amount that they had reported on their 1982 tax return.

OPINION

We must determine whether petitioners failed to report income on BEC's cancellation of Mr. Burke's debt. Petitioners argue that they did not, relying on the interpretation of discharge of indebtedness income set forth in Bowers v. Kerbaugh-Empire Co., 271 U.S. 170 (1926). Petitioners allege that they, on behalf of BEC, purchased the Bank Stock, and that State banking regulators later forced BEC to transfer the stock to Mr. Burke. Petitioners allege that BEC recorded a receivable

from Mr. Burke equal to the Bank Stock's original cost because the value of the stock was "uncertain and extremely doubtful". Petitioners allege that the Bank stock became worthless in or around 1984, and that they never received any benefit from their ownership of the stock. Petitioners argue that the substance of the facts surrounding the cancellation of Mr. Burke's debt is analogous to Kerbaugh-Empire Co., although the form that they employed to effectuate this cancellation is not. Respondent argues that the form used by petitioners controls this case, and, even if it does not, BEC's cancellation of Mr. Burke's debt is a taxable event. Petitioners bear the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

We agree with respondent that BEC's cancellation of Mr. Burke's debt is a taxable event. Petitioners' brief is aimed primarily at their claim that the instant facts resemble the facts of Bowers v. Kerbaugh-Empire Co., supra, and that Kerbaugh-Empire Co. entitles them to exclude the amount of canceled debt from income. To support their position, petitioners rely mainly on Mr. Burke's testimony, which was brief. We are unpersuaded. We find most of Mr. Burke's testimony unbelievable. It was general and conclusory in nature, and most of it is unsupported by other evidence in the record. Under the circumstances, we are not required to rely on this testimony, and we do not. United States v. Hager, 969 F.2d 883, 888 (10th Cir. 1992); United

States v. Leach, 749 F.2d 592, 600 (10th Cir. 1984); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

From the credible evidence in the record, we find that petitioners overvalued the Walnut property when they transferred it to BEC, and that they are now looking for a way to mitigate the taxes that are due on account of this overvaluation. Petitioners purchased the properties from third parties and transferred the properties to BEC mainly for a cancellation of Mr. Burke's debt. Such a transfer is a taxable event. Property that is transferred in cancellation of debt may generate gain from a sale or exchange under section 1001, measured by the excess of the property's fair market value over its adjusted basis. Sec. 1001; see also Gehl v. Commissioner, 102 T.C. 784, 785 (1994), affd. without published opinion 50 F.3d 12 (8th Cir. 1995); Danenberg v. Commissioner, 73 T.C. 370, 380-381 (1979); Estate of Delman v. Commissioner, 73 T.C. 15, 28 (1979); Bialock v. Commissioner, 35 T.C. 649, 660 (1961).

For purposes of computing petitioners' gain or loss on the transfer of the properties to BEC, petitioners are considered to have realized an amount equal to the fair market value of the properties at the time of the transfer. Sec. 1.1001-2(c), Example (8), Income Tax Regs.; see also Marcaccio v. Commissioner, T.C. Memo. 1995-174. Given the fact that the aggregate value of the properties was $512,000 ($262,000 + $250,000) and that their aggregate basis was $81,276 ($72,426 +

$8,850), we sustain respondent's determination that petitioners realized a $430,724 capital gain ($512,000 - $81,276) on this transfer.  Petitioners do not challenge respondent's application of section 1202 to this gain.  We sustain respondent's determination that $348,283 of this capital gain is taxable to petitioners, and that petitioners underreported $331,593 of this gain ($348,283 - $16,690).

The amount of consideration that exceeded the properties' fair market value also is income to petitioners.  To the extent that a corporation cancels its shareholder's debt without consideration, the cancellation may be treated as a distribution to the shareholder, which, in turn, may be treated as a dividend to the shareholder to the extent of the corporation's earnings and profits (E+P).  Secs. 61(a)(12), 301(a), (c)(1); United States v. Kirby Lumber Co., 284 U.S. 1 (1931); Shephard v. Commissioner, 340 F.2d 27 (6th Cir. 1965), affg. per curiam T.C. Memo. 1963-294; Haber v. Commissioner, 52 T.C. 255, 262 (1969), affd. 422 F.2d 198 (5th Cir. 1970); sec. 1.301-1(m), Income Tax Regs.  The same is true when a corporation assumes its shareholder's debt, without receiving adequate consideration. See Old Colony Trust Co. v. Commissioner, 279 U.S. 716 (1929); Tennessee Sec., Inc. v. Commissioner, 674 F.2d 570 (6th Cir. 1982), affg. T.C. Memo. 1978-434; Enoch v. Commissioner, 57 T.C. 781 (1972); American Properties, Inc. v. Commissioner, 28 T.C. 1100 (1957), affd. per curiam  262 F.2d 150 (9th Cir. 1958).

Given the fact that BEC "paid" petitioners $925,000 in consideration for property worth $512,000, and that petitioners do not dispute that BEC had enough E+P to characterize the $413,000 difference as a dividend, we sustain respondent's determination that petitioners received a $413,000 dividend on the transfer.[3]

In reaching our holdings herein, we have considered all arguments made by petitioners for contrary holdings and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing,

Decisions will be entered

under Rule 155.

---

[3] We recognize that the amount of debt canceled by BEC exceeded the amount recited in the contract. Respondent has not attempted to tax this excess amount.