T.C. Memo. 1997-221


UNITED STATES TAX COURT


WALTER T. McGEE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25430-95.                    Filed May 12, 1997.


<u>T. Scott Tufts</u> and <u>Brian F. D. LaVelle</u>, for petitioner.

<u>Frank C. McClanahan</u>, for respondent.


MEMORANDUM OPINION


COLVIN, <u>Judge</u>:  This case is before the Court on petitioner's motion to dismiss for lack of jurisdiction on the grounds that the notice of deficiency issued to petitioner is not valid under section 6212.  Petitioner also requests that we

certify this case for immediate appeal if we do not grant his motion.

Respondent determined that petitioner had an income tax deficiency of $369,390 for 1987 and was liable for additions to tax for 1987 of $92,348 for failure to timely file under section 6651(a)(1) and $92,348 for substantial understatement of tax under section 6661.

A hearing was held on petitioner's motion in Winston-Salem, North Carolina.

We must decide the following issues:

1.   Whether respondent's deficiency determination is valid for jurisdictional purposes.  We hold that it is.

2.   Whether it is appropriate in this case to certify denial of petitioner's motion for interlocutory appeal.  We hold that it is not.

Section references are to the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.

Background

A.   Petitioner

Petitioner lived in Asheville, North Carolina, when he filed the petition in this case.  In 1985, 1986, and 1987, petitioner lived in Europe.  He owned several businesses that sold resort time shares.  He was a director of A.T.O. Marketing Limited (A.T.O.) in 1987.  A.T.O., an Isle of Man entity, sued Kenning Atlantic Iberica, NV (Kenning), a former partner.  The case was

settled. Petitioner received a settlement payment in the form of a £570,000 (570,000 pounds sterling) bank draft payable to Swiss Bank Corp. on or about May 7, 1987.

Petitioner filed his 1987 individual income tax return on September 15, 1989. He did not report as income the $965,425 determined by respondent to be the dollar equivalent of £570,000 on May 7, 1987.

B.    Respondent's Examination and Activities Before Respondent
      Issued the Notice of Deficiency

Respondent examined petitioner's 1987 income tax return. Respondent concluded that petitioner was a director and an owner of A.T.O., and that he received a £570,000 bank draft payable to Swiss Bank Corp.

On April 28, 1994, petitioner's counsel sent respondent's counsel a letter protesting the audit. Petitioner's counsel contended that petitioner should not have to prove that he did not receive income and that respondent should not be allowed to rely on the presumption of correctness. Petitioner's counsel also objected to the fact that respondent helped the Office of Child Support Enforcement in Fort Pierce, Florida, to collect $87,516 in past due child support from petitioner through the Federal Tax Refund Offset Program.

Petitioner gave respondent a written statement (not under oath) in which petitioner denied receiving any personal benefit

from the £570,000 or that he was an owner of A.T.O.  Respondent

had petitioner's statement before March 3, 1995.

On March 3, 1995, respondent sent a letter to petitioner in

which respondent proposed to include the $965,425 in petitioner's

1987 income and asked for a response in 15 days (15-day letter).

In the letter, respondent explained the proposed adjustments to

petitioner's 1987 income tax as follows:

> In July 1987, Walter T. McGee (taxpayer) moved to
> his residence in Asheville, North Carolina; having
> resided the three previous years in Europe where he was
> in the business of marketing time shares in various
> resort areas.  On form 2555, "Foreign Earned Income"
> attached to his 1987 return, the taxpayer indicated
> that he resided in England and was employed by T.S.
> Holdings, Ltd. for the period 7/1/86 through 6/30/87.
> During the years that the taxpayer resided in Europe,
> he was the beneficial owner of several companies which
> included, but were not limited to T.S. Holdings
> Limited, A.T.O. Marketing Limited (ATO), and United
> Timeshare Group (UTG).  UTG was formed in May 1986
> between H.E.I.L. Ltd. and T.S. Holdings Ltd. H.E.I.L.
> Ltd. was represented by Jack Petchey and T.S. Holdings
> was represented by the taxpayer, who also served as a
> director of T.S. Holdings Ltd. which in turn was the
> beneficial owner of ATO.  The taxpayer was the
> beneficial owner of ATO.  At the time that UTG was
> formed, one of its purposes was to consolidate the
> timeshare marketing and sales interests of T.S.
> Holdings Ltd. and the timeshare interests of H.E.I.L.
> Ltd. into a single holding company to be known as UTG.
> At the time of the formation of UTG, ATO owned a 50%
> interest in a timeshare development called Club San
> Antonio along with Kenning Atlantic Iberica (Kenning).
> ATO and Kenning were not related to one another.
> Sometime after the formation of UTG, taxpayer and
> Kenning suffered irreconcilable differences which
> resulted in the taxpayer filing a lawsuit against
> Kenning.  Kenning entered into a settlement with A.T.O.
> Marketing Ltd. (ATO) on or about May 07, 1987 whereby
> it purchased ATO's interest in Club San Antonio for the
> settlement amount of 575,000 pounds sterling.  At the
> US exchange rate on that date, the amount would have

been approximately $965,425.00 (see exhibit A). Throughout the negotiations ATO was represented by the taxpayer, as director of the company, and the attorney instructed by ATO, Mr. Danny Glasner. Mr. Glasner accepted a non-negotiable check in the sum of 575,000 pounds sterling payable to Maxwell Glasner & Company client account. The check was handed to Mr. Glasner, who accepted the check on behalf of ATO. On May 7, 1987, the taxpayer instructed Mr. Glasner to obtain, on behalf of ATO, a bankers draft drawn in favor of the Swiss Bank Corporation. The draft was to be in the sum of 570,000 pounds sterling with 5,000 pounds sterling having been deducted from the settlement figure and retained by Maxwell Glasner & Company. Later the same date the taxpayer, as director of ATO, confirmed by letter to Maxwell Glasner & Co. the receipt of a bankers draft in the sum of 570,000 pounds sterling payable to the Swiss Bank Corporation in accordance with previous instructions from ATO the same date. The accounts of ATO included no receipt of the 570,000 bankers draft or any reference whatsoever to the settlement reached with Kenning, or to the 570,000 received in settlement. Likewise, the taxpayer's personal individual income tax return for the 1987 tax year includes no receipt of the same or reference whatsoever to the settlement. The government has made an adjustment to the taxpayer's 1987 gross income in the amount of $965,425.00 reflecting his receipt of the lawsuit settlement.

Respondent also gave petitioner a detailed analysis of respondent's position on the facts and law in the 15-day letter.

On March 17, 1995, petitioner filed an Application for Taxpayer Assistance Order, Form 911, in which petitioner asked respondent to show that he received any economic benefit from the settlement funds and that he be given an Appeals Office conference. Petitioner asked for an investigation for violations under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)

(Federal agents may be sued in their individual capacity),[1] and possible recovery under section 7433, which provides for civil damages for certain unauthorized collection actions.

C. Notice of Deficiency

Respondent concluded that petitioner did not comply with respondent's requests to provide information about what happened to the £570,000. Respondent also concluded that the £570,000 settlement did not appear on the books and records of A.T.O. Respondent also concluded that petitioner directed Maxwell Glasner & Co. to deposit the £570,000 in a Swiss bank.

On September 8, 1995, respondent mailed a notice of deficiency to petitioner in which respondent determined that petitioner was liable for a deficiency in income tax of $369,390 for 1987 and additions to tax of $92,348 under section 6651(a)(1) and $92,348 under section 6661. In the notice of deficiency, respondent determined that the settlement proceeds of $965,425 were income to petitioner. Respondent explained that determination as follows:

> It is determined that you received $965,425.00 (which is the dollar equivalent of 570,000 pounds sterling on May 7, 1987) on May 7, 1987, which amount was not reported on your return filed for the taxable year 1987. This amount represents cash proceeds from

---

[1] The plaintiff in Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), complained that an agent of the Federal Bureau of Narcotics, acting under a claim of authority, entered the plaintiff's apartment and arrested him for alleged narcotics violations. The Court found that the search was unlawful and unreasonable.

Kenning Atlantic Iberica, NV, in settlement of litigation instituted by you, allegedly on behalf of A.T.O. Marketing Limited, an Isle of Man entity of which you were a director. You received this amount on May 7, 1987, in the form of a Bank Draft from Lloyd's Bank, Plc payable to the Swiss Bank Corporation, through your solicitors, Maxwell, Glasner & Co., and you acknowledged receipt of the Bank Draft by letter to Maxwell, Glasner & Co. dated May 7, 1987. On that date you also advised Danny Glasner, Esq., of Maxwell, Glasner & Co. that "The Banker's Draft will be collected by Mr. Walter T. McGee a director of A.T.O. Marketing Limited."

The foregoing amount is determined to be your income for the reasons set forth above, as well as the following reasons:

(1) You were the last identifiable person in possession of the Bank Draft, and you have failed to document its subsequent disposition;

(2) You have stated that "The check [Bank Draft] was deposited in the Swiss Bank Corporation for the benefit of A.T.O. Marketing Limited," but you have failed to provide any documentation, such as a deposit slip or an account reference in support of this contention;

(3) The books and records of A.T.O. Marketing Limited do not reflect the receipt of the 570,000 pound sterling Bank Draft in 1987 or at any subsequent time, nor do they reflect the settlement with Kenning Atlantic Iberica, NV, in 1987, or any account in the name or for the benefit of A.T.O. Marketing Limited at the Swiss Bank Corporation in 1987;

(4) You have stated "I was not a shareholder or owner of A.T.O. Marketing Limited," but your solicitors, Scates, Rosenblatt, admitted in August of 1989 that you were the "beneficial owner" of TS Holdings, and TS Holdings, in turn, was the registered 50% owner of A.T.O. Marketing Limited;

(5) When you were contacted by a representative of the Petchey Group of Companies (the corporate group which was the successor in interest to TS Holdings and to A.T.O. Marketing Limited) and were asked to account for the disposition of the 570,000 pounds sterling, you

merely stated that the funds had been disbursed and declined to comment further;

(6) When agents of the Internal Revenue Service attempted to contact your solicitors, Maxwell, Glasner & Co., with respect to their involvement in the A.T.O. Marketing Limited settlement, they refused to provide information unless you agreed to waive the attorney-client privilege, which you have refused to do; and

(7) Since you directed the disposition of the settlement funds, and were the last person in possession, custody and control of the Bank Draft payable to the Swiss Bank Corporation on May 7, 1987; since you have declined to further document is [sic] disposition, which disposition cannot be documented beyond your receipt; and since the entity for whose benefit it was allegedly applied denies receipt or any benefit from the Bank Draft, it is determined that the entire amount of the Bank Draft is income to you for the taxable year 1987.

Accordingly, your taxable income is increased in the amount of $965,425.00 for the taxable year ending December 31, 1987. See the schedule below for this computation.

| | |
|---|---|
| Proceeds from settlement | 575,000 pounds sterling |
| Exchange rate | 1.6790 dollars to pounds |
| Proceeds from settlement in U.S. dollars | $965,425 |

In the notice of deficiency, respondent also stated (and petitioner does not dispute) that petitioner reported $29,577 in income for 1987.

## Discussion

Petitioner contends that this Court lacks jurisdiction to decide this case because respondent's notice of deficiency is invalid. Petitioner contends that (a) respondent failed to make the required determination of an actual deficiency, (b) the notice was prepared with gross ineptitude, and (c) respondent is

trying to circumvent the statute of limitations. We disagree for reasons stated next.

A. Whether Respondent's Notice of Deficiency Is Valid

Petitioner contends that we lack jurisdiction because respondent's notice of deficiency is invalid.

   1. Effect of Petitioner's Denial That He Received Any Economic Benefit From the £570,000 Settlement

Petitioner received a £570,000 bank draft payable to Swiss Bank Corp. from Kenning on or about May 7, 1987. Petitioner contends that respondent knew that the payment from Kenning was made in settlement of A.T.O.'s lawsuit with Kenning, and that petitioner was a director of A.T.O. Before respondent issued the proposed adjustment letter on May 3, 1995, petitioner gave respondent a written statement (not under oath) in which petitioner denied receiving any personal benefit from the £570,000. Petitioner contends that respondent had no basis for determining that petitioner benefited personally from the settlement funds. Petitioner points out that respondent did no net worth analysis. Petitioner contends that respondent based the notice of deficiency on mere suspicion and that the notice of deficiency is invalid.

We disagree. To be valid, a notice of deficiency must fairly advise the taxpayer that the Commissioner has actually

determined a deficiency and specify the year and amount.[2]  <u>Sealy Power Ltd. v. Commissioner</u>, 46 F.3d 382, 386 (5th Cir. 1995), affg. in part and revg. and remanding on other issues T.C. Memo. 1992-168; <u>Abrams v. Commissioner</u>, 787 F.2d 939, 941 (4th Cir. 1986), affg. 84 T.C. 1308, 1310 (1985); <u>Mayerson v. Commissioner</u>, 47 T.C. 340, 348-349 (1966).  The notice of deficiency here clearly shows that respondent determined that petitioner had an income tax deficiency of $369,390 for 1987 and was liable for additions to tax for 1987 of $92,348 for failure to timely file under section 6651(a)(1) and $92,348 for substantial understatement of tax under section 6661.  The explanation that respondent attached to the notice of deficiency stated that petitioner had received the £570,000 in a settlement; that respondent asked petitioner and his counsel for information about petitioner's disposition of the settlement, but they refused to provide it; that respondent was unable to trace the settlement proceeds to anyone other than petitioner; that respondent checked the books and records of A.T.O. and found no reference to the £570,000; and that petitioner had told a successor to A.T.O. that the £570,000 settlement had been disbursed, but petitioner provided no further information to A.T.O.'s successor.

---

[2] We discuss sec. 7522 below at par. A-5.

2.   Case Law Upon Which Petitioner Relies

Petitioner contends that the facts here are similar to those in Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983).  We disagree.  In Scar, the Commissioner disallowed a deduction from a partnership with which the taxpayers had no connection.  Statements attached to the notice of deficiency showed that the Commissioner had issued it without reviewing the tax return that the taxpayers had filed.  Id. at 1365.  The U.S. Court of Appeals for the Ninth Circuit held that the notice of deficiency was invalid under section 6212(a) because the Commissioner had not reviewed the taxpayers' return or otherwise actually determined the taxpayers' liability for a particular taxable year.  Id. at 1370.  The notice of deficiency in the instant case shows that respondent examined petitioner's tax return for 1987 and adjusted items on that return.  There is no statement in the notice of deficiency which suggests that respondent did not actually determine a deficiency in petitioner's income tax for 1987.

Petitioner contends that, as in Portillo v. Commissioner, 932 F.2d 1128 (5th Cir. 1991), affg. in part and revg. in part and remanding T.C. Memo. 1990-68, respondent incorrectly determined that petitioner received unreported income.  In

Portillo v. Commissioner, supra, the Commissioner issued a notice of deficiency based on a Form 1099 filed with the Commissioner. The U.S. Court of Appeals for the Fifth Circuit held that the notice of deficiency was arbitrary because the Commissioner failed to show the requisite indicia that the taxpayer received unreported income, and the Commissioner knew that the employer who issued the Form 1099 to the taxpayer lacked records to support the amounts contained in the Form 1099. Id. at 1131, 1133-1134. Portillo is distinguishable from the instant case because here petitioner concedes that he received the £570,000 bank draft; respondent checked A.T.O.'s books and records, which did not show that A.T.O. had received the settlement, and petitioner was the last person to whom respondent could trace the settlement funds.

We have considered the other cases that petitioner cites in his motion, reply to respondent's objection, and statement under Rule 50(c), including Sealy Power Ltd. v. Commissioner, supra, (we may shift burden to Commissioner if notice of deficiency is arbitrary); Powers v. Commissioner, 100 T.C. 457 (1993), affd. in part, revd. in part and remanded in part 43 F.3d 172 (5th Cir. 1995) (litigation costs awarded to taxpayer); and Durkin v. Commissioner, 87 T.C. 1329, 1402 (1986), affd. 872 F.2d 1271 (7th

Cir. 1989) (Commissioner's subpoenas were burdensome and late). The cases petitioner cites do not support his contention that we lack jurisdiction.

3.  Whether the Notice of Deficiency Is Invalid Because It Did Not State That Respondent Had 6 Years To Assess Tax

Respondent mailed the notice of deficiency more than 3 and less than 6 years after petitioner filed his return for 1987. Respondent contends that respondent has 6 years to assess tax under section 6501(e)(1)(A) because petitioner omitted more than 25 percent of his gross income. Petitioner contends that respondent must assert grounds in the notice of deficiency to support respondent's reliance on section 6501(e)(1)(A). Petitioner contends that Portillo v. Commissioner, supra; Reis v. Commissioner, 1 T.C. 9 (1942), affd. 142 F.2d 900 (6th Cir. 1944); and Stoller v. Commissioner, T.C. Memo. 1983-319, establish that the notice of deficiency is invalid because respondent did not state grounds for relying on the 6-year period to assess tax. We disagree.

In the notice of deficiency, respondent determined that petitioner reported income of $29,577 for 1987 and failed to report income of $965,425. It is clear from the notice of deficiency that respondent determined that petitioner's unreported income exceeded 25 percent of his gross income. Thus,

the notice of deficiency plainly shows grounds for application of the 6-year period to assess tax.[3]

Petitioner contends that, because respondent relies on the 6-year period to assess tax, the notice of deficiency must, but does not, include an indirect method of proof of unreported income, such as a net worth, source and application, or bank deposits analysis. Petitioner cites Sutherland v. Commissioner, T.C. Memo. 1996-1, and Arendt v. Commissioner, T.C. Memo. 1994-443, to support petitioner's contention that if respondent relies on the 6-year period to assess tax, the notice of deficiency must apply such a method or other proof of receipt of unreported income. We disagree that Sutherland or Arendt supports petitioner's contention. In Sutherland, we rejected the taxpayer's contention that the Commissioner mailed the notice of deficiency too late. We concluded that the 6-year assessment

---

[3] Secs. 6212 and 7522 do not specifically require the Commissioner to state in the notice of deficiency whether the Commissioner relies on sec. 6501(e)(1)(A). Petitioner recognizes that the statute of limitations is an affirmative defense and does not affect the jurisdiction of this Court. Rule 39; Robinson v. Commissioner, 57 T.C. 735, 737 (1972); Badger Materials, Inc. v. Commissioner, 40 T.C. 1061, 1063 (1963). Thus, petitioner's reliance on Reis v. Commissioner, 1 T.C. 9 (1942), affd. 142 F.2d 900 (6th Cir. 1944), and Stoller v. Commissioner, T.C. Memo. 1983-319, is misplaced because, in those cases, we decided whether the time to assess tax had expired, not whether we had jurisdiction.

period applied because the taxpayer reported gross income of $66,022 and failed to report $408,318. In <u>Arendt</u>, we held that the notice of deficiency was arbitrary because the Commissioner failed to produce substantive evidence linking the taxpayer to the tax-generating act of receiving income from the sale of illegal drugs. Here, petitioner admitted that he received the bank draft for £570,000. Cf. <u>Tokarski v. Commissioner</u>, 87 T.C. 74 (1986).

Petitioner contends that it is improper for respondent to determine a deficiency merely because the time to assess tax was about to expire. We disagree. If the notice of deficiency is otherwise valid, it is not invalidated merely because the time to assess tax has almost passed.

4. <u>Petitioner's Documentary Evidence</u>

Petitioner received a letter dated February 17, 1994, from Banks & Co., Chartered Accountants. The letter states that the Board of A.T.O. did not want Jack Petchey and his companies to know what happened to the £570,000, so they placed those funds out of his control until they could reach a settlement with him. Petitioner contends that this letter supports his position that respondent's notice of deficiency is invalid because it shows that he did not personally benefit from the settlement funds. We

disagree. Petitioner first provided this letter to respondent in his reply to respondent's objection to his motion to dismiss, well after respondent mailed the notice of deficiency.

> 5. <u>Whether the Notice of Deficiency Complies With Section 7522</u>

Petitioner cites section 7522,[4] which requires that a notice of deficiency describe the basis for a deficiency and identify

---

[4] Sec. 7522 was originally enacted as sec. 7521(2) by sec. 6233(a) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3735, applicable to mailings made on or after Jan. 1, 1990, and was redesignated as sec. 7522 by sec. 11704(a)(30) of the Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, 104 Stat. 1388, 1388-519. It provides:

> SEC. 7522(a) General rule. -- Any notice to which this section applies shall describe the basis for, and identify the amounts (if any) of, the tax due, interest, additional amounts, additions to the tax, and assessable penalties included in such notice. An inadequate description under the preceding sentence shall not invalidate such notice.
>
> (b) Notices to which section applies. --
>
> This section shall apply to --
>
> > (1) any tax due notice or deficiency notice described in section 6155, 6212, or 6303,
> >
> > (2) any notice generated out of any information return matching program, and
> >
> > (3) the 1st letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals.

the amounts of tax due, interest, and any additional amounts, additions to tax, and assessable penalties. Sec. 7522(a) and (b). An inadequate description does not invalidate the notice. Sec. 7522(a).

Here, the notice of deficiency clearly describes the basis for respondent's determination. Respondent's basis for the determination is that petitioner received the £570,000, A.T.O. records do not show that A.T.O. received the funds, and petitioner refused to give respondent information showing that he did not benefit from the settlement funds. We conclude that the notice of deficiency describes the basis for and amounts of tax and penalties due as required by section 7522.

6. Conclusion

We conclude that the notice of deficiency is valid.

B. Judicial Notice of Writ of Summons

Petitioner asks us to take judicial notice of a Writ of Summons issued by a British court which notifies Kenning that A.T.O. has filed a claim and that Kenning may pay or contest the claim within 14 days. Petitioners ask us to take notice of this document to prove that A.T.O. sued Kenning. We need not do so because the parties do not dispute the fact that A.T.O. sued Kenning. Thus, this issue is moot.

C.    Certification for Appeal

Petitioner asks us to certify this case for immediate appeal if we do not grant his motion.  We decline to do so.

We will certify an interlocutory order for an immediate appeal if we conclude that (1) a controlling question of law is present, (2) substantial grounds for difference of opinion are present, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. Sec. 7482(a)(2)(A); Rule 193.  Failure to meet any one of the three requirements is grounds for denial of certification. General Signal Corp. & Subs. v. Commissioner, 104 T.C. 248, 251 (1995); Kovens v. Commissioner, 91 T.C. 74, 77 (1988), affd. without published opinion 933 F.2d 1021 (11th Cir. 1991).  Only exceptional circumstances justify a departure from the policy of postponing appellate review until after entry of final judgment. Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978); Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir. 1990); General Signal Corp. & Subs. v. Commissioner, supra at 251.

Petitioner has not stated reasons for us to certify this case for interlocutory appeal.  There is not a substantial ground for difference of opinion as to the question of law present in

this case; i.e., whether the notice of deficiency is valid.  We decline to certify denial of this motion for interlocutory appeal.

To reflect the foregoing,

<u>An Order will be issued denying petitioner's Motion To Dismiss For Lack Of Jurisdiction</u>.